IAN A. STEWART, ESQ. (SBN: 250689)
Ian.Stewart@wilsonelser.com
GREGORY K. LEE, ESQ. (SBN: 220354)
Gregory.Lee@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071-2407
Telephone:   (213) 443-5100
Facsimile:    (213) 443-5101

FRANCIS TORRENCE (SBN 154653)
Francis.Torrence@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER LLP**
525 Market Street, 17th Floor
San Francisco, CA 94105-2725
Telephone:   (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Plaintiffs,
ELEMENTS BEHAVIORAL HEALTH, INC.,
WESTSIDE SOBER LIVING CENTERS, INC.
and NANCI E. STOCKWELL

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELEMENTS BEHAVIORAL HEALTH, INC., WESTSIDE SOBER LIVING CENTERS, INC. and NANCY STOCKWELL,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL MARCUS, AND JOHN DOES -10,<br><br>Defendants, | **MISCELLANEOUS PROCEEDING**<br><br>Civil Action No.: CV 15 80 121 MISC<br>C.D. Cal. Civil Action No.: CV14-08760-JAK-RZ<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY ON NONPARTY TWITTER, INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  TBD<br>Time:  TBD<br>Crtrm:  TBD |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I.   CERTIFICATION UNDER LOCAL RULE 37.1 ..................................................................1

II.  FACTS ....................................................................................................................................2

III. ARGUMENT ..........................................................................................................................6

   A.   Legal Summary of Pre-Trial Discovery ..........................................................................6

   B.   Legal Summary of First Amendment and Anonymous Speech ......................................6

   C.   "Real Evidentiary Basis" .................................................................................................7

CONCLUSION ................................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Art of Living Found. v. Does 1-10*, No. 10-5022, 2011 U.S. Dist. LEXIS 129836 (N.D. Cal. Nov. 9, 2011) ..................................................................................................................................7

*Burrill v. Nair*, 217 Cal. App. 4th 357 (Cal. App. 3d Dist. 2013) ........................................10

*Highfields Capital Mgmt., L.P. v. Does*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) ............7, 11

*In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011) ...................................7, 8

*McIntrye v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) ....................................................6

*Music Group Macao Commer. Offshore Ltd. v. Does*, 2015 U.S. Dist. LEXIS 25970 (N.D. Cal. Mar. 2, 2015) ...............................................................................................................10

*Nizam-Aldine v. City of Oakland*, 47 Cal. App. 4th 364 (Cal. Ct. App. 1996) ....................10

*Right-Price Recreation, LLC v. Connells Prairie Cmty. College*, 146 Wn.2d 370, 46 P.3d 789 (Wash. 2002) ...............................................................................................................10

*Shoen v. Shoen*, 5 F.3d 1289 (9th. Cir. Ariz. 1993) ................................................................6

*Smith v. Maldonado*, 72 Cal.App.4th 637 (Cal. Ct. App. 1999) ..........................................10

*United States v. Bryan*, 339 U.S. 323 (1950) .........................................................................6

**Statutes**

17 U.S.C § 501, *et. seq.* ..........................................................................................................8

Cal. Pen. Code § 528.5 ...........................................................................................................8

Civ. Code, § 45a ...................................................................................................................10

Civ. Code, § 46 .....................................................................................................................10

**Other Authorities**

5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 541 .............................................10

**Rules**

Fed. R. Civ. P. 26 ....................................................................................................................6

Fed. R. Civ. P. 45 ....................................................................................................................6

1  **NOTICE OF MOTION AND MOTION**

2  **TO ALL PARTIES, NON-PARTY TWITTER AND THEIR ATTORNEYS OF**

3  **RECORD:**

4  PLEASE TAKE NOTICE that following the assignment of this miscellaneous proceeding
5  to a courtroom, this matter will be heard at the earliest available date, pursuant to proper notice,
6  available to that court. Moving party will provide proper notice as to that information regarding
7  that assignment to nonparty Twitter and their attorneys of record. Said hearing will be located at
8  450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Elements Behavioral Health,
9  Inc. ("Elements"), Westside Sober Living Centers, Inc. d/b/a Promises Treatment Centers
10 ("Promises") and Nanci Stockwell ("Stockwell") (collectively, "Plaintiffs") will and hereby do
11 move this Court for an Order compelling nonparty Twitter, Inc. ("Twitter") to comply with the
12 Plaintiffs' Second Subpoena ("Second Subpoena"), served on Twitter on February 3, 2015.

13 This motion is brought pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure
14 on that grounds that after Plaintiffs and Twitter met and conferred and Plaintiffs offered to narrow
15 the scope of the Second Subpoena, Twitter still refused to produce the requested information. This
16 motion is based on this Notice of Motion and Motion and the following Memorandum of Points
17 and Authorities in Support thereof, all files and records in this action and such additional matters
18 as may be judicially noticed by the Court or may come before the Court prior to or at the hearing
19 on this matter.

20 **MEMORANDUM OF POINTS AND AUTHORITIES**

21 I.   **CERTIFICATION UNDER LOCAL RULE 37.1**

22 Under Local Rule 37.1, Plaintiffs have conferred on several occasions by phone and email
23 correspondence with Twitter's counsel, Perkins Coie, regarding the production of the discovery
24 requested in the Second Subpoena. Bialek Dec. ¶4. On February 24, 2015, Plaintiffs contacted
25 Perkins Coie, via telephone to discuss Twitter's objection letter to the Second Subpoena dated
26 February 17, 2015. Bialek Dec. ¶¶10-11. Plaintiffs' counsel offered to narrow the scope of the
27 Second Subpoena to cover only subscriber information to address Twitter's concern about
28 information allowed to be disseminated under the federal Stored Communications Act and to

eliminate the alleged vague, overbroad and unduly burdensome language that was objected to in the letter. *Id.* Further, Plaintiffs argued that the user's identity of the eighteen ("18") Twitter accounts was not protected under the First Amendment as defamation and false impersonation are not protected forms of speech. On February 27, 2015, Perkins Coie responded that Twitter stood on its previous objections. Bialek Dec. ¶12.

In an effort to avoid Court intervention, Plaintiffs again attempted to narrow the scope of the Second Subpoena by asking only for the IP addresses associated with each Twitter account. Bialek Dec. ¶13. However, on March 12, 2015, Twitter stood on its objections, which focused mainly on anonymous speech as a protected speech under the First Amendment. Bialek Dec. ¶14. Therefore, the parties could not reach an agreement on whether the First Amendment was a basis for objection to the Second Subpoena. Based on Twitter's indication that it would not agree to have the court in the Central District of California adjudicate the present motion, Plaintiffs have filed the Motion to Compel Discovery in the instant court pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i) in order for the court to evaluate whether Twitter should comply with the subpoena and provide the information requested to assist the Plaintiff in identifying the John Doe(s) who is/are harassing the Plaintiffs, falsely impersonating them and defaming them through a systematic usage of foreign and domestic services designed to frustrate the evidence gathering in the Plaintiffs' attempt to enforce a current injunction, demonstrate contempt and prepare for an award of damages and a permanent injunction.

II.   FACTS

A.   The Complaint and the First Amended Complaint

On November 12, 2014, Plaintiffs filed a Complaint in the Central District of California against Defendants John Does 1-10.  After gathering additional and reliable evidence, Plaintiffs filed a First Amended Complaint on December 8, 2014 against Michael Marcus ("Marcus") and John Does 1-10 ("Does") for violations of the Copyright Act, violations of the Lanham Act, false impersonation, fraud, defamation, trade libel and unfair competition and misappropriation. *See* Exhibit A.

Mr. Marcus and the Does are currently or were users of the following Twitter accounts ("Twitter Accounts"): @nancistockwell, @nancystockwel, @nanceystockwell, @nanceistockwel, @nanceestockwell, @nanciestockwel, @StockwellNancie, @StockwellNanci1, @StockwellNanci, @StockwellNancy, @nancestockwell, @nanncistockwell, @nanciistockwell, @TheresaCarlisl, @LaurelShires, @RehabPolice, @RehabWatch and @RehabKNine. Plaintiffs have thus far been ultimately successful in removing seventeen of eighteen of the Twitter Accounts except for @RehabKNine.

In the majority of the Twitter Accounts, Marcus and/or the Does falsely impersonated Plaintiff Stockwell by creating Twitter handles of Stockwell's name (or by impersonating two other employees at Plaintiffs' organization) and by uploading one of Stockwell's copyrighted photographs to be used as Does' Twitter profile picture. For every Twitter Account created by Does, Does published disparaging statements about Elements, Promises, Stockwell and other employees of Elements. Each Twitter Account was publicly available to be viewed. In addition, Does utilized the hashtag (#) function (e.g. #treatment) to broaden the reach of the defamatory postings. For example, a user searching "treatment" on Twitter could find each of Does' Tweets (that used #treatment) at the top of the search results. Currently, while Plaintiffs have reason to believe that Defendant Marcus is behind all of the accounts, Plaintiffs have been unable to confirm this or identify additional Defendants in this matter due to the pseudonymous nature of Twitter and of the Twitter Accounts.

In addition, evidencing Marcus'/Does' intent to perpetrate the harassment, a new Twitter account, @RaymondFinkles, was created by the Defendants on or about April 9, 2015. *See* Exhibit I. The profile picture of this account is a photograph of an employee of the Plaintiffs. *Id.* The use of this photograph is unauthorized. Additionally, the background picture of the account includes a photograph of a group of "Chippendales"-styled men and three photoshopped photographs of Stockwell and another employee of the Plaintiffs incorporated into the photograph. *Id.* Again, the use of these photographs is unauthorized and these photographs are being used in a distasteful manner. To make things worse, the user identifies himself as being a Partner at Christian T. Grey Enterprises, a nod to the character in the recent "steamy" book and movie, Fifty

1  Shades of Grey. Further, the user of this account is following and has attracted followers from the
2  porn industry by "re-tweeting" content posted by users in this industry. The Defendants' intention
3  is clear: to continue to harass the Plaintiffs and to cause further damage and harm to them and their
4  employees. The creation and use of this account follows an almost identical path as the past
5  Twitter Accounts that were created by the Defendant. Therefore, the Plaintiffs respectfully ask the
6  Court to include the account, @RaymondFinkles in the Order compelling Twitter to comply with
7  the subpoena request.
8      Starting on April 13, 2015, the Plaintiffs have filed multiple takedown requests to Twitter
9  alerting Twitter of this account. The Plaintiffs also sent an email message to Twitter's counsel
10 requesting an immediate takedown of this account. As of April 20, 2015, the @RaymondFinkles
11 account is still active. Throughout this case, Twitter has continued to delay the takedown process,
12 facilitating the perpetrators' mission to harm the Plaintiffs. As a result, Plaintiffs' counsel had to
13 plead with Defendant's counsel on multiple occasions to have the Twitter Accounts removed.
14 Without his client admitting guilt, the Twitter Accounts were removed.
15     Furthermore, Marcus/Does have escalated the harassment of Plaintiffs and their employees
16 with the creation of another new Twitter account, @AuntsJemimas. *See* Exhibit J. The profile
17 picture of @AuntsJemimas is a photograph that is meant to depict Theresa Carlisle, an employee
18 of the Plaintiffs, in an unfavorable light. *Id.* However, this photograph is not Theresa Carlisle.
19 Additionally, the background picture of the account includes four photographs of employees of the
20 Plaintiffs including Nanci Stockwell, Jeremy Stalbird, Laurel Shires and Dr. David Sack. *Id.* These
21 people have been the main targets of Marcus/Does attacks. Again, the use of these photographs is
22 unauthorized.
23     Additionally, Marcus/Does are using the trademark "Elements Behavioral Health" without
24 permission in the background picture of @AuntsJemimas. *Id.* Marcus/Does are also defaming the
25 Plaintiffs in the background picture with a photoshopped statement "A Recovery and Relapse
26 Corporation," which is directed at Elements. *Id.* The Defendant's intention is clear, to continue to
27 harass the Plaintiffs and to cause further damage and harm to them and their employees. The
28 creation and use of this account follows an almost identical path as the past Twitter Accounts that

were created by the Defendant. Therefore, the Plaintiffs respectfully ask the Court to include the account, @AuntsJemimas in the Order compelling Twitter to comply with the subpoena request.

Twitter cannot frustrate the takedown process and then refuse to comply with the court ordered subpoenas to identify the individual. To allow Twitter to continue its delay and defiance of the Court Order would make Twitter complicit in the harmful conduct and be akin to a willing participant.

### B. The Subpoenas

On November 24, 2014, the Plaintiffs served a subpoena on nonparty Twitter requesting information that would lead to uncovering the identities of Does. *See* Exhibit B. At the time of the subpoena, only seven ("7") Twitter accounts had been created. On December 8, 2014, Perkins Coie responded to the subpoena with an objection letter citing unauthorized early discovery, the federal Stored Communications Act and the First Amendment as defenses to its opposition. *See* Exhibit C. On January 30, 2015, upon a motion, the issuing court in the Central District of California entered an Order Granting Plaintiffs' Motion for Expedited, Limited Discovery on non-party Twitter. *See* Exhibit D. Plaintiffs served Twitter with a Second Subpoena on February 3, 2015 requesting discovery related to the identities of the Twitter Accounts. *See* Exhibit E. On February 17, 2015, Twitter responded to the Second Subpoena with an objection letter basing their objections on the federal Stored Communications Act, the First Amendment and their claim that language in the subpoena was vague, overbroad and unduly burdensome. *See* Exhibit F. As mentioned previously, Plaintiffs and Perkins Coie conferred about the objections and Plaintiffs were willing to narrow the scope of the subpoena to only the IP address. To date, Twitter has failed to produce any discovery requested in the Subpoenas. Bialek Dec. ¶21.

Here, the Plaintiffs respectfully request that this Court enforce the Second Subpoena on nonparty Twitter, but only compelling Twitter to reveal the name, e-mail address, IP address and time stamps for each Twitter Account. Twitter has claimed that the Court must make the necessary legal analysis to ensure that the appropriate First Amendment standard is met and that the right to anonymous free speech is protected. While arguments were advanced in motion papers, Plaintiffs

1 are not so brash as to believe they can dictate to a Federal Judge the content he/she includes in
2 his/her decision.
3     The parties in the underlying matter are both eager to have this information released.
4 Marcus' counsel, David Livingston ("Livingston"), corresponded with Daniel Lassen of Perkins
5 Coie regarding the Second Subpoena served on Twitter. Livingston, on behalf of Marcus,
6 authorized Twitter to provide any information relating to the Twitter Accounts. Livingston Dec.
7 ¶5. However, Twitter has continued to object to the subpoena even after the Defendant's
8 authorization. Even if Marcus had a right to freedom of speech, he has waived that right and
9 Twitter cannot assert it on his behalf. Yet Twitter continues to object, even to the release of
10 information or the accounts Marcus has conceded he created.
11 III.    ARGUMENT
12     A.    **Legal Summary of Pre-Trial Discovery**
13     The use of subpoenas in a civil case is governed by Rule 45 of the Federal Rules of Civil
14 Procedure. Rule 45 provides guidance for securing documents, electronically stored information,
15 testimony and other tangible things relevant to a pending litigation from nonparties. Fed. R. Civ. P.
16 45. In addition, Rule 26 governs civil discovery generally. *See* Fed. R. Civ. P. 26.
17     Pre-trial discovery is customarily "accorded a broad and liberal treatment". *Hickman v.*
18 *Taylor*, 329 U.S. 495, 507 (1947); *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th. Cir. Ariz. 1993). If no
19 claim of privilege applies, a nonparty can be compelled to produce evidence regarding any matter
20 "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to
21 the discovery of admissible evidence." *See* Fed. R. Civ. P. 26; *Shoen*, 5 F.3d at 1292. This broad
22 right of discovery is based on the general principle that litigants have a right to "every man's
23 evidence". *United States v. Bryan*, 339 U.S. 323, 331 (1950). Furthermore, a litigant's wide access
24 to relevant facts serves the integrity and fairness of the judicial process by promoting the search of
25 the truth. *Shoen*, 5 F.3d at 1292.
26     B.    **Legal Summary of First Amendment and Anonymous Speech**
27     It is well established that the First Amendment protects the right to speak anonymously.
28 *McIntrye v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). "However, the right to anonymity

is not absolute." *Art of Living Found. v. Does 1-10*, No. 10-5022, 2011 U.S. Dist. LEXIS 129836, 4* (N.D. Cal. Nov. 9, 2011). The Internet allows for anonymous communication using a number of different forums such as Twitter, Facebook, Scribd, etc. However, the origination of any anonymous speech on the Internet can be traced back to the original sender through, for example, an IP address. "Where anonymous speech is alleged to be unlawful, the speaker's right to remain anonymous may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim." *Id*.

To avoid implications of unlimited enforcement of subpoenas to uncover the identities of anonymous speakers on the Internet, the Courts have taken a number of different approaches. In *In re Anonymous Online Speakers*, 661 F.3d 1168, 1174-77 (9th Cir. 2011), the Ninth Circuit reviewed the developing tests in the area of anonymous online speech. The parties in *Anonymous Online* advocated that the court should evaluate anonymous online speech using the test articulated in *Highfields Capital Mgmt., L.P. v. Does*, 385 F. Supp. 2d 969 (N.D. Cal. 2005). Under *Highfields*, a party seeking to discover the identity of an anonymous speaker must first "persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." *Highfields*, 385 F.Supp. 2d at 975-76. If a plaintiff makes the necessary showing, the court must then "assess and compare the magnitude of the harms that would be caused to the [plaintiffs' and defendants'] competing interests" by ordering that the defendant's identity be disclosed. *Id.* at 976. If this assessment reveals that disclosing the defendant's identity "would cause relatively little harm to the defendant's First Amendment and privacy rights," but is "necessary to enable [the] plaintiff to protect against or remedy serious wrongs," then the court should allow the disclosure of the identity of the defendant. *Id.* Accordingly, the Plaintiffs believe the Court should apply the *Highfields* approach in its analysis.

C. **"Real Evidentiary Basis"**

The first prong in the *Highfields* analysis requires the Plaintiffs to prove that their claims have "real evidentiary basis". *Id*. "[T]he plaintiff must adduce competent evidence of each fact that is 'essential' to 'at least one of [its] causes of action." *Id*. However, a plaintiff does not need to

meet the higher standard of demonstrating "sufficient evidence" of each element of its claim. *Anonymous Online Speakers*, 661 F.3d at 1175-77. While prior case law requires producing competent evidence of only one claim, here, Plaintiffs will provide competent evidence of each fact that is "essential" to at least three of their causes of action, copyright infringement, false impersonation and defamation.

### 1. Plaintiffs have made a Prima Facie Case for Copyright Infringement

Under the Copyright Act, 17 U.S.C § 501, *et. seq.*, copyright infringement arises when a copyright owner's rights are violated by another. The rights of a copyright owner include the right to reproduce the work, the right to derivative works, the right to distribution, the public display right and the public performance right. In addition, the existence of a valid copyright is an essential element of any copyright infringement claim. Here, the Stockwell owns two valid U.S. Copyright Registrations, VA 1-933-936 for "Image" and VA 1-935-705 for "Profile Photo", registered on November 10, 2014 and November 18, 2014. *See* Exhibit B. The Defendants violated Stockwell's rights by reproducing, distributing and publicly displaying the Image and the Profile Photo on Twitter.com without authorization. *Id.* The Image or the Profile Photo was reproduced, distributed and publicly displayed by the Defendant on the following accounts: @nancistockwell, @nancystockwel, @nanceystockwell, @nanceistockwel, @nanceestockwell, @nanciestockwel, @StockwellNancie, @StockwellNanci1, @StockwellNanci, @StockwellNancy, @nancestockwell, @nanncistockwell and @nanciistockwell. *Id.* Therefore, the Plaintiffs have provided "competent evidence" and have established every element of copyright infringement.

### 2. Plaintiffs have made a Prima Facie Case for False Impersonation under Cal. Pen. Code § 528.5

Under the California Penal Code§ 528.5, false impersonation is defined as any person who knowingly and without consent credibly impersonates another actual person through or on an Internet website or by other electronic means for purposes of harming, intimidating, threatening, or defrauding another person. An impersonation is credible if another person would reasonably believe, or did reasonably believe, that the defendant was or is the person who was impersonated.

*Id.* Furthermore, "electronic means" includes opening an e-mail account or an account or profile on a social networking Internet website in another person's name. *Id.*

Here, the Defendants used Twitter to falsely impersonate Stockwell as well as two other employees of Promises, Laurel Shires and Theresa Carlisle. First, the Defendants created at least thirteen ("13") Twitter accounts that falsely impersonated Stockwell: @nancistockwell, @nancystockwel, @nanceystockwell, @nanceistockwel, @nanceestockwell, @nanciestockwel, @StockwellNancie, @StockwellNanci1, @StockwellNanci, @StockwellNancy, @nancestockwell, @nanncistockwell and @nanciistockwell. Each of these accounts included Stockwell's name, one of the two copyrighted photographs (Image or Profile Picture) and her current job description at Elements in the profile description. A reasonable person would believe that any of these impersonated Twitter accounts created by Marcus and/or the Does was Stockwell.

Furthermore, Marcus and/or the Does posted content from these impersonation accounts related to Stockwell's line of work. *See* Exhibit B. They utilized Twitter to disseminate false statements relating to Elements' and Promises' business, reputation and patient care. They did not relent in the assault and repeatedly re-created a new Twitter account within 24-48 hours even after the first few Twitter Accounts were removed. Their mission was to harass the Plaintiffs and spread defamatory statements using these Twitter Accounts as if Stockwell was the person behind the postings. Therefore, the Plaintiffs have provided "competent evidence" and have established every element of false impersonation.

As if that was not sufficient, Does also created fake email accounts and transmitted information harmful to Plaintiffs. In several of those cases, Plaintiffs have been able to secure corroborating evidence demonstrating that Marcus was the perpetrator. The evidence was overwhelming enough that the Court entered an injunction against Marcus <u>on consent</u>. Bialek Dec. ¶9. Accordingly, Plaintiffs have clearly met this element.

   3. <u>Plaintiffs have made a Prima Facie Case for Defamation under Cal. Civ. Code §§ 44, 45a and 46</u>

A prima facie defamation claim under California law requires the intentional publication of a false statement of fact that has a natural tendency to injure the plaintiff's reputation or that causes

special damage. *Burrill v. Nair*, 217 Cal. App. 4th 357 (Cal. App. 3d Dist. 2013). A statement is defamatory if it tends to harm the reputation of another by lowering him in the community's estimation or deter third persons from associating with him. *Music Group Macao Commer. Offshore Ltd. v. Does*, 2015 U.S. Dist. LEXIS 25970, 9 (N.D. Cal. Mar. 2, 2015) (*citing Right-Price Recreation, LLC v. Connells Prairie Cmty. College*, 146 Wn.2d 370, 46 P.3d 789 (Wash. 2002)). In California,

> [w]here a libelous statement "is defamatory *on its face*, it is said to be libelous per se, and actionable without proof of special damage. But if it is defamation *per quod*, i.e., if the defamatory character is not apparent on its face and requires an explanation of the surrounding circumstances (the 'innuendo') to make its meaning clear, it is not libelous per se, and is not actionable without pleading and proof of special damages." (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 541, p. 794; see Civ. Code, § 45a.) Similarly, certain slanderous statements are considered slanderous per se, and actionable without proof of special damage. However, the slander statute expressly limits slander per se to four categories of defamatory statements, "including statements (1) charging the commission of crime, or (2) tending directly to injure a plaintiff in respect to the plaintiff's [profession, trade, or] business by imputing something with reference to the plaintiff's [profession, trade, or] business that has a natural tendency to lessen its profits." (*Mann, supra*, 120 Cal.App.4th at pp. 106–107; see Civ. Code, § 46.) And while libel per se is not so limited, courts have held the foregoing categories of defamatory statements to also constitute libel per se.

*Burrill v. Nair*, 217 Cal. App. 4th 357, 382-383, (Cal. App. 3d Dist. 2013).
Further, when the person being defamed is a public figure, the burden is on the plaintiff to prove falsity. *Nizam-Aldine v. City of Oakland*, 47 Cal. App. 4th 364 (Cal. Ct. App. 1996). In cases involving matters of purely private concern, the burden of proving the truth is on the defendant. *Smith v. Maldonado*, 72 Cal.App.4th 637, 646 & n.5 (Cal. Ct. App. 1999). In this case, the matter is purely of private concern.

Here, Marcus and/or the Does intentionally published defamatory statements on the Twitter Accounts, which they knew to be untrue at the time of the writing. For example, they repeatedly claim that Elements has been accused of corrupt marketing practices to sabotage other health providers; that Elements has a history of false sexual allegations against its own employees resulting in termination; that Promises mission is to provide the lowest quality patient care and nutritional care at "innumerable costs"; that there is corruption, malpractice and relapse ongoing at Promises and that Promises is designed for patients to relapse. (*See* Exhibit B). These examples are only snapshots of the content that has been posted by Marcus and/or the Does. The content posted on each Twitter Account was repetitive and directed towards Plaintiffs' business, reputation and patient care.

Additionally, all Twitter Accounts were public accounts where millions of Twitter users were able to view the defamatory remarks. For each Twitter Account, the user intentionally followed other Twitter users in the health care industry and utilized commonly searched hashtags for the purpose of spreading the defamatory statements to a larger audience. As a result of following other users, these accounts gained "followers" who could view the Tweets in real time. It is clear that Marcus' and/or Does' mission was to greatly injure Plaintiffs' business and reputation. These statements do not require further explanation of the surrounding circumstances as these libelous statements are defamatory per se. In California, special damages need not be proven when the statements are defamatory per se, which is the case here. Additionally, the Court should find that these postings are not satirical. Publishing statements regarding the Plaintiffs' treatment of its patients and accusing the Plaintiffs' of having a corrupt business is not a joking matter and has caused serious concern. Based on the facts set forth, the Plaintiffs have provided "competent evidence" and have established every element of defamation in order to satisfy the first prong in *Highfields*.

D. <u>A Balance of the Harms to the Plaintiffs and the Defendants Favors Plaintiffs</u>

The second prong of the *Highfields* approach in the Northern District of California is a balancing of the harms to the Defendants and Plaintiffs. In *Highfields*, the Court held that if the balancing reveals that disclosing the defendant's identity "would cause relatively little harm to the

defendant's First Amendment and privacy rights," but is necessary to enable [the] plaintiff to protect against or remedy serious wrongs," then the court should allow the disclosure. *Id.* at 376. Upon making this assessment, the court must ask "whether disclosure of the defendant's identity would deter other critics from exercising their First Amendment rights." *Id.* at 980-81.

Here, the weight of the harm to the Plaintiffs outweighs the potential harm to the Defendants. As discussed previously, the defamatory statements on Twitter do not fall under the First Amendment as protected speech. These remarks were "fighting words" and not legitimate commercial criticism that is protected by the First Amendment. The intent was to publicly spread false information regarding violations of HIPAA, poor patient care and unfair employee practices occurring at the Plaintiffs' facilities. Furthermore, this was not a one-time occurrence of Marcus'/ Does' actions. There were at least two-hundred ("200") defamatory remarks across at least eighteen ("20") different Twitter accounts. Additionally, Marcus and/or Does intentionally drafted their defamatory Tweets such that any user including potential clients searching for Promises or Elements could have easily discovered these Tweets.

Even if the information Twitter has does not specifically identify Marcus, the balance of hardships tips in favor of Plaintiffs here. Marcus' and/or Does' actions on Twitter should not be protected under the First Amendment. The harm caused to the Plaintiffs by the defamatory statements published on Twitter far outweighs any harm caused to the Defendants' First Amendment right to speak anonymously online.

E. <u>The Speech was not Anonymous</u>

Twitter appears concerned with protecting anonymous speech. In the instant case, we are not dealing with anonymous speech as much as we are presented with pseudonymous speech. Here, the Defendants are not choosing an arbitrary name to write under. Rather, the Defendants have opted to select names that impersonate the Plaintiffs or their employees. These false representations are akin to false impersonation, unfair business practices and fraud. The statements have not basis to be protected.

NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY; MEMO OF P&A THEREOF
1362476v.1

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court grant their motion to compel Twitter to produce discovery on the identity of the users of the following Twitter accounts: @nancistockwell, @nancystockwel, @nanceystockwell, @nanceistockwel, @nanceestockwell, @nanciestockwel, @StockwellNancie, @StockwellNanci1, @StockwellNanci, @StockwellNancy, @nancestockwell, @nanncistockwell, @nanciistockwell, @TheresaCarlisl, @LaurelShires, @RehabPolice, @RehabWatch, @RehabKNine, @RaymondFinkles, and @AuntsJemimas and for such other, further and different relief this Court deems just and proper.

Dated: April 20, 2015

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: _____
FRANCIS TORRENCE
IAN A. STEWART
GREGORY K. LEE4
Attorneys for Plaintiffs
ELEMENTS BEHAVIORAL HEALTH, INC.,
WESTSIDE SOBER LIVING CENTERS, INC. and
NANCI E. STOCKWELL