James G. Snell, State Bar No. 173070
JSnell@perkinscoie.com
Daniel Lassen, State Bar No. 271446
DanLassen@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

Attorneys for Non-Party
Twitter, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| Elements Behavioral Health, Inc. et al., | Case No. 15-MC-80121-DMR |
| Plaintiffs, | **NON-PARTY TWITTER, INC.'S OPPOSITION TO MOTION TO COMPEL DISCOVERY FROM TWITTER** |
| v. | |
| Marcus et al., | Date: June 11, 2015<br>Time: 11:00 a.m.<br>Dept: 4<br>Judge: Hon. Donna M. Ryu |
| Defendants. | |

## I. STATEMENT OF ISSUES

The issues to be decided are the following: (i) have Plaintiffs met their burden of proof under the First Amendment in order to unmask the identities of anonymous Twitter users, (ii) may Plaintiffs compel the production of information related to Twitter accounts that they have not subpoenaed, and (iii) may Defendant Marcus consent to the production of information related to accounts where he denies responsibility for some of the accounts, and has not established which accounts he owns and which ones he does not?

## II. INTRODUCTION

Plaintiffs seek to unmask the identities of twenty-one anonymous online speakers by compelling production of the users' identifying information from non-party Twitter, Inc.

("Twitter").[1] In doing so, Plaintiffs ask the Court to adjudicate whether the First Amendment requirements have been met such that disclosure of the requested information is justified. Twitter agrees that the Court should adjudicate the First Amendment issue to ensure that the appropriate First Amendment standard is met and that the users' right to anonymous free speech is protected, before any identifying information is compelled from Twitter for use in Plaintiffs' underlying lawsuit. However, Twitter is involved only as a non-party in receipt of a subpoena and has no stake or involvement in the underlying litigation between the parties.

Twitter and Plaintiffs agree that the test articulated in *Highfields Capital Management v. Doe*, 385 F.Supp.2d 969 (N.D. Cal. 2005) is the appropriate test for the speech at issue in this matter. Motion to Compel at 7. Under that standard, Plaintiffs must first submit actual evidence to make a *prima facie* showing of at least one cause of action against each anonymous account. Second, Plaintiffs must show that they will suffer greater harm if the Court denies their motion than the anonymous speakers would if the Court grants the motion. *Highfields*, 385 F.Supp.2d at 975-76; Motion to Compel at 7.

Plaintiffs have not submitted any evidence to make their *prima facie* showing related to seven of the accounts identified in the underlying subpoena and, as noted, two of the accounts have not even been subpoenaed.[2] As to those eleven accounts, the Court should deny the motion to compel for those reasons.

For the remaining twelve accounts, the information Plaintiffs have provided appears insufficient to meet the applicable First Amendment standards. Twitter objected to the subpoena on First Amendment grounds in good faith, notified the email addresses associated with the subpoenaed accounts, and now asks only that the Court consider the facts as presented by the Plaintiffs and enter a finding that addresses the protections afforded to anonymous speech.

---

[1] The underlying subpoena identifies nineteen accounts, and the motion to compel improperly demands production for two additional accounts that were never identified in the subpoena.

[2] Because these two accounts are not properly before the Court, Twitter has not notified the email addresses associated with the accounts of pending legal process.

## II.     BACKGROUND

Non-party Twitter is an online service provider that allows its users to create and share ideas and information instantly.  On November 24, 2014, Twitter received a subpoena from Plaintiffs, seeking identifying information related to specific Twitter accounts in connection with their complaint filed in the Central District of California.  Declaration of Daniel Lassen in Support of Opposition to Motion to Compel Discovery ("Lassen Decl.") ¶ 2, Ex. A.  Twitter notified the affected Twitter users of Plaintiffs' subpoena, and served written objections on the grounds that Plaintiffs failed to provide information demonstrating that the Central District had considered and imposed the First Amendment safeguards required before a litigant can unmask an anonymous speaker, the subpoena constituted unauthorized early discovery, and the subpoena sought content in violation of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq*. ("SCA").  *Id.* ¶ 3, Ex. B.  Plaintiffs then moved the Central District to authorize early discovery, and argued in that motion that the First Amendment does not protect the Twitter users' anonymity.  Lassen Decl. ¶ 4, Ex. C.  The Central District granted the motion and signed Plaintiffs' proposed order, authorizing early discovery, but made no mention of the users' First Amendment right to speak anonymously.  *Id.* ¶ 5, Ex. D.  The Court did, however, handwrite on the order that "[a]ny subpoenaed party retains its rights to contest the subpoenas in accordance with the rules."  *Id.*[3]

On February 3, 2015, Twitter received a new subpoena from Plaintiffs, seeking identifying information related to nineteen Twitter users.  *Id.* ¶ 6, Ex. E.  On February 17, 2015, Twitter served written objections, including that Plaintiffs still had not provided information

---

[3] There is no factual basis for Plaintiffs' hyperbole that "[t]o allow Twitter to continue its delay and defiance of the Court Order would make Twitter complicit in the harmful conduct and be akin to a willing participant."  Motion to Compel at 5.  Twitter has not defied any Court order.  The Central District's order expressly blesses Twitter's objections.  Nor has Twitter delayed.  Plaintiffs first sought unauthorized early discovery from Twitter, then in seeking authorization for early discovery decided not to ask the Central District to undertake the required First Amendment analysis (but instead argued that the First Amendment did not apply), and then served an overbroad subpoena narrowed with Twitter through meet and confer discussions.  Lassen Decl. ¶¶ 6-10.  Twitter timely and properly objected to the subpoena as narrowed on March 12, 2015.  *Id.* ¶ 11, Ex. I.  Plaintiffs waited until April 20, 2015 to move to compel.  Thus, any delay was caused by Plaintiffs' strategy decisions, not Twitter.

1  demonstrating that the Central District had considered and imposed the First Amendment

2  safeguards.[4]  *Id.* ¶ 7, Ex. F.  On February 17, 2005, Twitter notified the affected Twitter users of

3  Plaintiffs' new subpoena.  *Id.*

4        On February 24, 2015, Twitter and Plaintiffs met and conferred.  *Id.* ¶ 8.  During that

5  process, Plaintiffs narrowed their requests to basic subscriber information and IP addresses

6  related to the nineteen Twitter accounts specifically identified in the second subpoena.  *Id.*

7  Although that obviated Twitter's SCA, vagueness, relevance and over-breadth objections, it did

8  not resolve Twitter's First Amendment objection.  *See id.* ¶ 9, Ex. G.  Plaintiffs then offered to

9  narrow its request to only the IP addresses related to the nineteen accounts, but again, that did not

10  resolve Twitter's First Amendment objection.  *Id.* ¶¶ 10-11, Ex. I.

11        On March 3, 2015, Defendant Marcus represented to Twitter that he did not intend to file

12  a motion to quash the subpoena, and admitted responsibility for some of the Twitter accounts but

13  did not identify which accounts belonged to him and which did not.  *Id.* ¶ 12.  On March 9, 2015,

14  Defendant informed Twitter that he did not object to disclosure, but again did not identify which

15  accounts belonged to him.  *Id.* ¶ 13.  Plaintiffs emailed Twitter the next day, construing

16  Defendant's non-objection as consent and asking when Twitter intended to produce the

17  information.  *Id.* ¶ 14, Ex. H.  Twitter offered that it "may produce basic subscriber information

18  for [Defendant's] accounts if it receives actual consent from [D]efendant in the form of a reply to

19  Twitter's notice of receipt of legal process.  The [D]efendant should log in to the email account

20  that received the notice and reply to it that he consents to Twitter disclosing non-content basic

21  subscriber information in response to the subpoena."  *Id.* ¶ 11, Ex. I.  Plaintiffs ignored Twitter's

22  offer and instead filed their motion to compel on April 20, 2015, along with the Declaration of

23  David M. Livingston, Defendant's counsel, in support of the motion to compel, representing that

---

[4] Although the second subpoena seeks content in violation of the SCA, Plaintiffs only request (at 5) that the Court compel "Twitter to reveal the name, e-mail address, IP address and time stamps for each Twitter account."  Plaintiffs no longer seek content related to the users, obviating the need for Twitter to brief its SCA objection.  Twitter also incorporates by reference its other objections of vagueness, over-breadth and relevance.  Through meet and confer discussions Plaintiffs agreed to withdraw its requests that drew those objections (Lassen Decl. ¶ 8), and Plaintiffs do not seek to compel production of information responsive to those withdrawn requests.

-4-
NON-PARTY TWITTER, INC.'S OPPOSITION TO MOTION TO COMPEL DISCOVERY
Case No. 15-MC-80121-DMR

Mr. Livingston had "authorized Twitter on behalf of Marcus to provide the Plaintiffs with any and all information requested in the subpoena" related to eighteen accounts. Livingston Decl. in Support of Motion to Compel ¶ 5. Nowhere in that declaration, however, does Defendant's counsel identify which accounts belong to Mr. Marcus.

On April 27, 2015, Twitter again offered to Plaintiffs and Defendant Marcus to produce non-content basis subscriber information for account that Defendant Marcus could confirm consent by responding to Twitter's notice emails. Lassen Decl. ¶ 15, Ex. J. Twitter has not received any responses from Defendant Marcus as of the filing of this opposition brief.

### III.   ARGUMENT

#### A.   The Court Must Adjudicate Whether Defendants Have Met the First Amendment Standard Before It May Compel Twitter to Produce Identifying Information.

Plaintiffs argue (at 7-12) that they have articulated interests that justify unmasking anonymous Internet speakers and that outweigh the users' right to privacy under the First Amendment. Twitter agrees that the First Amendment standard for unmasking an anonymous Internet user must be met *before* Twitter may be compelled to produce identifying information, and absent such a showing the motion to compel must be denied, but it does not appear that Plaintiffs have met that standard.

The First Amendment protects anonymous speech on the Internet. *See Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 199–200 (1999); *Reno v. ACLU*, 521 U.S. 844, 870 (1997). "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely." *In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011). That freedom includes the right to criticize through parody. *See Highfields Capital Mgmt. L.P. v. Doe*, 385 F.Supp.2d 969, 980 (N.D. Cal. 2005) (finding that the First Amendment protected defendant's parody of plaintiff that included use of an Internet screenname that was almost identical to the plaintiff's mark). But that protection is not absolute. *Anonymous*, 661 F.3d at 1173. "Where anonymous speech is alleged to be unlawful, the speaker's right to remain anonymous may give way to a plaintiff's need to discover the speaker's identity in order to

1  pursue its claim." *Art of Living Foundation v. Does*, Case No. 10-CV-05022, 2011 WL 5444622,
2  at *4 (N.D. Cal., Nov. 9, 2011).

3  Plaintiffs argue (at 7) that the court should apply the test articulated in *Highfields*. 385
4  F.Supp.2d at 975-76.  Twitter agrees.  *Highfields* is the appropriate First Amendment standard to
5  apply in this matter, because the speech includes criticism and parody of an organization in which
6  the public has a high interest--an addiction recovery center.  *See id.* (finding the right to speak
7  anonymously outweighed the right to discovery in claims related to trademark infringement and
8  defamation where the defendant used an almost identical Internet screenname to parody the
9  plaintiff); *Art of Living*, 2011 WL 5444622, at *7 (applying *Highfields* standard and quashing
10 subpoena where anonymous speakers published a copyrighted work on an Internet blog as part of
11 their criticism of the copyright owner); *Music Group Macao Commercial Offshore Ltd. v. Does*,
12 Case. No. 14-mc-80328, 2015 WL 930249 (N.D. Cal., March 2, 2015) (applying *Highfields* and
13 denying plaintiffs' motion to compel identifying information related to underlying claims of
14 defamation, copyright infringement, unfair competition and breach of contract where anonymous
15 speakers published disparaging remarks on Twitter about plaintiff).

16 The *Highfields* test has two parts.  First, the plaintiff must make a *prima facie* showing of
17 the claim for which disclosure is sought, "adduc[ing] *competent evidence*-and the evidence
18 plaintiff adduces must address *all* of the inferences of fact that plaintiff would need to prove in
19 order to prevail under at least one of the causes of action plaintiff asserts."  385 F.Supp.2d at 975
20 (emphasis in original).  If the evidentiary showing is made, "the second component of the test
21 requires the court to assess and compare the magnitude of the harms that would be caused to the
22 competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant." *Id.* at
23 976.

24 After arguing (at 7-12) that the Court should apply the *Highfields* standard and that they
25 have met that standard, Plaintiffs go on to argue without any basis (at 12) that pseudonymous
26 speech does not deserve First Amendment protection.  They are wrong.  *E.g. Highfields¸* 385
27 F.Supp.2d at 977 (finding that the use of a pseudonym that was almost identical to the plaintiff's
28

-6-
NON-PARTY TWITTER, INC.'S OPPOSITION TO MOTION TO COMPEL DISCOVERY
Case No. 15-MC-80121-DMR

trademark was protected speech); *Art of Living*, 2011 WL 5444622, at *10 (finding that postings under the pseudonym "Skywalker" were protected speech).

### 1. Plaintiffs Do Not Appear To Have Made A Prima Facie Showing For Any Of The Accounts.

Plaintiffs submit no evidence in support of seven of the nineteen accounts identified in the underlying subpoena.[5] Indeed, their First Amended Complaint ("FAC") does not even mention those accounts. Plaintiffs have therefore failed to make a *prima facie* showing for those seven accounts.

For the remaining twelve accounts identified in the underlying subpoena, Plaintiffs cite (at 6-8, Ex. B) nothing more than their subpoena and various takedown requests referenced in their FAC. Motion to Compel at 6-8, Ex. B.[6] A subpoena and takedown requests are not "competent evidence," *Highfields*, 385 F.Supp.2d at 975, as they amount to no more than Plaintiffs' allegations. *See id.* ("It is not enough for a plaintiff to plead and pray. Allegation and speculation are insufficient.") Even with respect to this insufficient information, Plaintiffs do not cite to the portions of the FAC that they contend support their allegations about copyright infringement, impersonation, and defamation, or how such information satisfies their burden of proof and outweighs any user First Amendment rights.

Even if Plaintiffs had submitted competent evidence, and explained its relevance, there would remain serious questions about whether the applicable standard is met here. First, "evidence of copyright infringement does not *automatically* remove the speech at issue form the scope of the First Amendment." *Art of Living*, 2011 WL 5444622, at *6. Use of a copyrighted work to criticize a copyright holder may constitute fair use, "which raises significant constitutional issues." *Id.* Thus, if the Court finds that a *prima facie* case has been shown, the

---

[5] Plaintiffs do not address the following seven accounts: @nanciistockwell, @TheresaCarlisl, @LaurelShires, @RehabPolice, @RehabWatch, and @RehabKNine.

[6] In the FAC, Plaintiffs also submit exhibits in support of its allegations regarding the following accounts: @nancistockwell (FAC, Ex. 11); @nancystockwel (FAC, Ex.13); @nanceystockwell (FAC, Ex. 16); @NanceiStockwell (FAC, Ex. 22); @nanceestockwell (FAC, Ex. 23); @NancieStockwel (FAC, Ex. 24); @StockwellNancie (FAC, Ex. 25); @StockwellNanci1 (FAC, Ex. 26); @StockwellNanci (FAC, Ex. 27); @StockwellNancy (FAC, Ex. 28); @NanceStockwell (FAC, Ex. 29); and @nanncistockwell (FAC, Ex. 30).

1  Court should then consider whether Defendants' use of Plaintiff Stockwell's photographs was a
2  fair use. *See* Motion to Compel at 8.

3  Second, regarding impersonation, Plaintiffs argue (at 9) that "[a] reasonable person would
4  believe that any of these impersonated Twitter accounts created by [Defendants] was [Plaintiff]
5  Stockwell." That may not be true. A reasonable person may conclude the accounts are obvious
6  parodies of Stockwell because they are critical of the organization she leads. *See* Motion to
7  Compel at 11 (characterizing the Defendants' postings as defamatory); *Highfields*, 385 F.Supp.2d
8  at 978 (finding no likelihood of confusion in its trademark infringement analysis where an
9  account was used to parody the plaintiff because readers may have recognized "the parody (irony,
10 sarcasm) that is so evident" in those messages). The Court should consider this issue as well, if it
11 concludes a *prima facie* case has been shown with respect to any account.

12 Third, defamation will not lie where the challenged statements are opinion. *E.g. Global
13 Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1270 (C.D. Cal. 2001) (finding that while
14 the "sentiments are not positive, the statement contains exaggerated speech and broad
15 generalities, all indicia of opinion" and "[g]iven the tone, a reasonable reader would not think the
16 poster was stating facts about the company, but rather expressing displeasure with the way the
17 company is run"). This issue, too, should be considered if the Court concludes a *prima facie* case
18 has been shown.

19 For these reasons, Plaintiffs do not appear to have made the required First Amendment
20 showing for any of the accounts.

21     **2.**    **The Court Must Balance the Competing Harms Before Compelling Twitter to Produce the Requested Information.**
22
23 *If* the Court finds Plaintiffs have made a *prima facie* case against the anonymous
24 defendants, *then* the Court must "compare the magnitude of the harms that would be caused to the
25 [plaintiffs' and defendants'] competing interests by a ruling in favor of plaintiff and by a ruling in
26 favor of defendant." *Highfields*, 385 F.Supp.2d at 976 (finding the competing interests favored
27 the anonymous speaker who had used the plaintiff's trademark as a screenname to parody the
28 plaintiff). In making this assessment, the Court must ask "whether disclosure of the defendant's

identity would deter other critics from exercising their First Amendment rights." *Art of Living*, 2011 WL 5444622 at *7 (finding the competing interests favored the anonymous speaker who had posted an unauthorized copy of plaintiff's copyrighted work). Not only is anonymous speech protected, but "the content of the defendant's speech also has First Amendment value." *Art of Living*, 2011 WL 5444622 at *5. For instance, "a person like defendant has a real First Amendment interest in having his sardonic message reach as many people as possible--and being free to use a screen name of the kind he used here carries the promise that more people will attend to the substance of his views." *Highfields*, 385 F.Supp.2d at 980.

Twitter takes no position on whether Plaintiffs could meet their burden of showing greater harm to themselves than to the anonymous speakers, but agrees with Plaintiffs that the Court must undertake this analysis if the Court determined that Plaintiffs could prove a *prima facie* case.

**B.    Two Of The Accounts Are Not Properly Before The Court.**

Plaintiffs seek (at 3-5) identifying information for two accounts that were not identified in the underlying subpoena.[7] Twitter takes no position on whether the evidence submitted in support of those accounts makes a *prima facie* showing. However, those requests are not properly before the Court because there is no underlying subpoena for that information. *See Aquino v. Ugwveze*, Case No. 08-CV-01639, 2010 WL 2302475, at *1 (E.D. Cal., June 7, 2010) ("Plaintiff may not file a motion to compel production of a document that he has not yet requested from Defendants directly."); *Brown v. Marshall*, Case No. 07-CV-0956, 2011 WL 794831, at *5 (E.D. Cal., Mar. 1, 2011) ("Plaintiff may not move to compel discovery responses absent evidence that defendants have been timely served with the discovery request at issue.").

**C.    Twitter Has Not Received Actual Consent from the Account Owners to Produce Identifying Information.**

Plaintiffs argue (at 6) that Defendant Marcus "authorized" production of information from the accounts. However, Defendant Marcus has not identified which accounts he owns, and he certainly cannot consent to the production of identifying information related to accounts that he does not own. Indeed, Defendant denied responsibility for many of the accounts at issue and did

---

[7] The accounts are @RaymondFinkles and @AuntsJemimas.

not identify which accounts he owns and which he does not. *See* Lassen Decl. ¶ 12. Further, Twitter sent notice of legal process to the email addresses associated with the accounts named in the subpoena and informed Plaintiffs that it "may produce non-content basic subscriber information if Twitter receives actual consent from the defendant in the form of a reply to Twitter's notice of receipt of legal process." Lassen Decl. ¶ 11, Ex. I. No such consent was received. Instead, Plaintiffs filed the motion to compel, along with Defendant's supporting declaration. That declaration does not give actual consent, because it does not identify which accounts belong to Defendant or provide proof of such ownership. *See* Livingston Decl.

In meet and confer discussions, Twitter proposed a reasonable process to confirm lawful consent. Plaintiffs and Defendant refused to follow that process, and instead Plaintiffs filed this motion with an insufficient declaration from Defendant's counsel. Twitter again invited Plaintiffs and Defendant to engage in a process that could confirm account ownership and lawful consent. *Id.* ¶ 15, Ex. J. Again, Defendant has refused to respond to any of Twitter's notice emails. Accordingly, there is no lawful consent here.

### IV.   CONCLUSION

For the reasons set forth above, Twitter respectfully requests that the Court deny Plaintiffs' motion to compel.

DATED:  May 5, 2015                                **PERKINS COIE LLP**

By: /s/ Daniel E. Lassen
Daniel Lassen, California Bar No. 271446
DanLassen@perkinscoie.com

Attorneys for Non-Party
Twitter, Inc.

-10-
NON-PARTY TWITTER, INC.'S OPPOSITION TO MOTION TO COMPEL DISCOVERY
Case No. 15-MC-80121-DMR

# CERTIFICATE OF SERVICE

I certify that on May 5, 2015, I electronically filed the foregoing *Non-Party Twitter, Inc.'s Opposition to Motion to Compel Discovery from Twitter* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record registered to receive such notifications. I also caused service to be made to the following attorneys of record pursuant to Civil L.R. 5-1(h)(2) by overnight delivery and electronic mail:

David M Livingston
Livingston Bakhtiar
3435 Wilshire Boulevard Suite 770
Los Angeles, CA 90010
Email: dml@livingstonbakhtiar.com

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 5th day of May, 2015.

/s/ Daniel E. Lassen
Daniel E. Lassen, California Bar No. 271446
Attorneys for Non-Party Twitter, Inc.
**Perkins Coie LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350
E-mail: DanLassen@perkinscoie.com

NON-PARTY TWITTER, INC.'S OPPOSITION TO MOTION TO COMPEL DISCOVERY
Case No. 15-MC-80121-DMR